United States District Court
Southern District of Texas
**ENTERED**
September 08, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GEORGE MICHAEL BARGAS, JR., | § | |
| TDCJ #01391486 | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-1861 |
| | § | |
| ERIC GUERRERO,[1] | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Texas state inmate George Michael Bargas, Jr. (TDCJ #01391486), representing himself, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2006 convictions and sentences for aggravated sexual assault of a child.  (Docket Entry No. 1; Docket Entry No. 2; Docket Entry No. 3).  The respondent has answered and filed a copy of the state court record.  (Docket Entry No. 25; Docket Entry No. 26; Docket Entry No. 29).  The respondent asserts that the petition must be dismissed because it is without merit.  (Docket Entry No. 29).  Bargas has not responded to the respondent's answer.  Based on the pleadings, the answer, the record, and the applicable law, the court denies the petition for a writ of habeas corpus.  The reasons are explained below.

---

[1] Bobby Lumpkin was the previous named respondent in this action.  Eric Guerrero has succeeded Lumpkin as Director of the Texas Department of Criminal Justice – Correctional Institutions Division.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Guerrero is automatically substituted as a party.

# I.     Background and Procedural History

## A.     Factual Background

Bargas challenges his convictions for the aggravated sexual assault of his young daughter, Tina.[2]  On direct appeal, the intermediate state court of appeals summarized the relevant facts as follows:

> The complainant, Tina, is appellant's daughter, who lived with appellant when she was between the ages of five and nine years old.  The father and daughter lived in several different homes, residing first in a home in the Highlands and then moving to Baytown when Tina was seven or eight years old.
>
> Tina last saw appellant in the fall of 2003, before going to live with her maternal grandmother, Gloria Wilson.  In May 2005, after watching a video at school on sexual abuse, Tina told a classmate that "something had happened to her."  School officials met with Wilson and explained that Tina needed counseling.  Though school officials did not specifically mention sexual abuse, Wilson suspected that Tina's bed-wetting, cowering, and fear of the dark resulted from Tina's having been sexually abused.  To learn more from Tina, Wilson confronted Tina by telling Tina that she knew Tina had been sexually abused; although, in reality, Wilson knew nothing about any sexual abuse.  When Wilson asked if anyone had touched Tina's "private parts," Tina responded that appellant had touched her in those places.  Wilson tried to find out more information, but Tina did not want to talk about it.  Wilson did not learn of the details of Tina's sexual abuse until later when she spoke with Tina's therapist, Priscilla Kleinpeter.
>
> After Wilson reported the sexual abuse, Child Protective Services referred then ten-year-old Tina to the Children's Advocacy Center, where she was interviewed on videotape by forensic interviewer Shelly Bohannon.  In that interview, Tina described the incidents of appellant's sexual abuse in specific detail.
>
> Sexual assault nurse examiner Danielle Livermore examined Tina in the fall of 2005.  Though she could not determine when the abuse took place and found no evidence of physical trauma, Livermore explained that the absence of medical evidence in examinations of sexually abused child victims is common.
>
> Appellant was charged in two indictments with aggravated sexual assault, and he pleaded "not guilty" to both indictments.  The cases were consolidated for trial.  In

---

[2] The Fourteenth Court of Appeals used the pseudonym "Tina" when referring to the complainant in Bargas's criminal case.  *See Bargas v. State*, 252 S.W.3d 876, 884 n1. (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).  The court will also refer to the complainant as Tina, consistent with the Texas court of appeals opinion in Bargas's state case.

her testimony at trial, Tina identified incidents of appellant's sexual abuse by indicating which home she lived in with appellant at the time of the incidents. She described in detail how appellant first touched her "private areas" when she was five years old in the Highlands home. According to Tina, he touched her "front private parts" with his hands between ten and twenty times at that home. Tina testified that more than twenty times in the Highlands home, appellant put his "private spot" on her "private spot" as he got on top of her, "shaking up and down" with his "private part" and making "grunting" noises.

When Tina was seven or eight years old, she and appellant moved to Baytown. One time, while living in Baytown, appellant came home from drinking and touched Tina under her clothing in her "front private area" with his hands, which hurt her. In another Baytown incident, appellant came into Tina's room and removed her clothing and his clothing. He "moved his body up and down" behind her, touching his sexual organ to her behind. Describing an incident at another person's Baytown home, Tina testified that appellant touched her "private parts" with his hand and scratched her there with his jagged fingernail. On that occasion, appellant then put his "private part" in Tina's mouth and moved her head up and down; she vomited afterwards.

Facts are disputed as to whether Tina saw appellant during the summer of 2003, the time period in which the State (in the indictment) alleged the offenses occurred. Appellant testified that he had no contact with Tina at that time because he had sent Tina to live with a relative, Josephine Avalos, while appellant worked out of town over the summer. Appellant's long-time friend and co-worker testified that appellant had no contact with Tina during that summer. Tina's two cousins and paternal aunt testified that Tina lived with them that summer, noting that Tina made an outcry statement about sexual abuse by an "Uncle Alex," who lived with Avalos; however, the cousins and aunt indicated that Tina had no contact with appellant. Tina recalled living with the cousins at some point and testified that her paternal aunt took her to and from appellant's home. Tina indicated that she later lived with maternal aunt Joann Hernandez for part of the summer. Tina testified that she could have lived with Avalos at some point in the springtime, but Tina did not recall a person named Alex or alleging he had abused her. Hernandez testified that Tina came to live with her in April 2003, and later that fall she typically dropped Tina off at appellant's home in Baytown before school and picked Tina up after school.

At trial, the State introduced outcry witness Bohannon, Tina's therapist Kleinpeter, and Baytown Police Department investigating officer Detective D.A. Harrison. Livermore testified as to the results of Tina's medical examination. Alice [a pseudonym], the fourteen-year-old daughter of appellant's former live-in girlfriend, provided extraneous-offense testimony that appellant twice had touched her chest and rubbed her stomach when she lived with appellant in the Highlands home. Appellant presented testimony from Tina's two cousins and aunt, and appellant testified in his own defense.

3

*Bargas v. State*, 252 S.W.3d 876, 884–86 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (internal footnotes omitted); *see also* Docket Entry No. 26-6 at 63–95.

### B.     The State Court Proceedings

In January 2006 Bargas was charged by indictments in Cause Number 1045924 and Cause Number 1045925 with aggravated sexual assault of a child. (Docket Entry No. 25-1 at 12; Docket Entry No. 25-2 at 12). After a trial in August 2006, a jury in the 177th District Court found him guilty in both cases. (Docket Entry No. 25-1 at 77; Docket Entry No. 25-2 at 77); *see also Bargas*, 252 S.W.3d at 884–85. He was sentenced to 60 years confinement for each offense, to run consecutively. (Docket Entry No. 25-1 at 90, 92–93; Docket Entry No. 25-2 at 90, 92–93); *Bargas*, 252 S.W.3d at 886. Bargas filed a direct appeal in both cases. (*See* Docket Entry No. 25-1 at 94; Docket Entry No. 25-2 at 94). On May 13, 2008, the Fourteenth Court of Appeals affirmed his convictions. *See Bargas*, 252 S.W.3d 876; (*see also* Docket Entry No. 26-6 at 63–95).

Bargas filed four state habeas applications. In his first two applications[3]—filed in April 2009—he alleged, among other claims, that his appellate attorney failed to inform him that the appellate court affirmed his convictions and that he had a right to seek discretionary review. (*See* Docket Entry No. 26-6 at 4–14; Docket Entry No. 26-11 at 21–32). On May 22, 2009, the trial court entered an order designating issues. (*See* Docket Enty No. 26-10 at 40). The district clerk forwarded the habeas applications to the Texas Court of Criminal Appeals, where it was received on October 4, 2019. (*See* Docket Entry No. 26-8 at 1). However, because there were no findings from the trial court resolving the disputed factual issues, on November 6, 2019, the applications were remanded to the trial court for that judge to complete an evidentiary investigation and to enter

---

[3] The claims presented in the first and second state habeas applications are identical. One application challenged the conviction in Cause No. 1045924 and the second application challenged the conviction in Cause Number 1045925.

4

findings of fact and conclusions of law.  (*See* Docket Entry No. 26-4; Docket Entry No. 26-8).  On March 4, 2020, the state trial court entered Findings of Fact and Conclusions of Law recommending that Bargas be granted an out-of-time appeal.  (*See* Docket Entry No. 26-10 at 79–82).  On October 21, 2020, the Texas Court of Criminal Appeals granted relief as to Bargas's claim that appellate counsel was deficient for failing to timely inform him that his convictions had been affirmed by the appellate court and that he had a right to seek discretionary review.  (*See* Docket Entry No. 26-2; Docket Entry No. 26-7; Docket Entry No. 26-9).  The Texas Court of Criminal Appeals allowed Bargas to return to the direct appeal process and file an out-of-time petition for discretionary review (PDR).  (*See* Docket Entry No. 26-2; Docket Entry No. 26-7).  Bargas filed a PDR on February 26, 2021.  (*See* Docket Entry No. 25-11).  On March 17, 2021, the Texas Court of Criminal Appeals refused the PDR.  *See Bargas*, 252 S.W.3d at 884.

In February 2022 Bargas filed his third and fourth state habeas applications.[4]  (*See* Docket Entry No. 26-13 at 5–34; Docket Entry No. 26-15 at 5–34).  After factual development, including the submission of an affidavit from Bargas's trial attorney, Mark Hochglaube, on April 1, 2022, the state district court judge issued Findings of Fact and Conclusions of Law recommending that relief be denied.  (*See* Docket Entry No. 26-13 at 52–60; Docket Entry No. 26-15 at 51–59).  On May 18, 2022, the Texas Court of Criminal Appeals denied the applications without written order.[5]  (*See* Docket Entry No. 26-12; Docket Entry No. 26-14).

---

[4] Again, the claims presented in the third and fourth state habeas applications are identical.  One application challenged the conviction in Cause No. 1045924 and the second application challenged the conviction in Cause Number 1045925.

[5] A denial of a habeas application "without written order" "signifi[es] that the Appeals Court had considered the merits of [the] petition and found that relief was not warranted."  *Hinojosa v. Davis*, No. CV 1:17-243, 2018 WL 3687992, at *1 (S.D. Tex. Apr. 12, 2018) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc)), *R&R adopted by,* No. CV B-17-243, 2018 WL 3660302 (S.D. Tex. Aug. 2, 2018).

### C.     Petitioner's Federal Habeas Petition

Bargas's federal habeas petition asserts the following claims:

(1) The evidence was insufficient to support a finding of guilty because no physical evidence was introduced at trial;

(2) The judgments of conviction are inconsistent and make stacking the sentences improper and unconstitutional as a violation of due process;

(3) Bargas was denied due process when the trial court held his habeas corpus application for over ten years before sending it to the Criminal Court of Appeals;

(4) The trial court erred by:

> (a) permitting Shelly Bohannon to testify as an outcry witness;

> (b) permitting a non-physician to testify to hearsay statements;

> (c) permitting a police detective to testify about findings of medical exams in child abuse cases;

> (d) permitting testimony of extraneous offenses at the guilt innocence phase of trial;

> (e) denying Bargas's motion for an instructed verdict;

> (f) denying Bargas's requests to changes in the jury charge;

> (g) limiting the scope of the Bargas's direct examination of witnesses concerning the victim's prior inconsistent statements; and

> (h) allowing the prosecutor to collaborate with the State's expert in fabricating evidence.

(5) Trial counsel provided ineffective assistance by:

> (a) failing to obtain expert witnesses;

> (b) failing to suppress extraneous offense testimony;

> (c) failing to obtain evidence of a CPS investigation;

> (d) failing to object to the prosecutor's instructions to the jury during closing argument;

(e) failing to object to the stacking of sentences;

(g) failing to request that each cause number be tried separately; and

(h) permitting the testimony of Tabitha Griffiths.

(6) The State failed to turn over *Brady* evidence and the prosecutor fabricated and falsified evidence.

(Docket Entry No. 1; Docket Entry No. 2).[6]

The respondent has filed an answer in response to the § 2254 petition, arguing that Bargas's claims should be dismissed because the claims are without merit.  (Docket Entry No. 29).  Bargas has not responded.

## II.    The Applicable Legal Standards

### A.    The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas corpus is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  *See Woodford v. Garceau*, 538 U.S. 202, 205–08 (2003).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application  of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (quoting 28 U.S.C. § 2254(d)); *Cobb v. Thaler*, 682 F.3d 364, 372–73 (5th Cir. 2012) (same).  "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based

---

[6] To facilitate a more orderly analysis, the court has organized Bargas's claims differently than Bargas presents them in his petition.

on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404–08 (2002)). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

When a claim concerns a question of fact, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Martinez v. Caldwell*, 644 F.3d 238, 241–42 (5th Cir. 2011). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact.'" *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)). A federal habeas court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." *Id.* This court may consider only the factual record that was before the state court in determining the

reasonableness of that court's findings and conclusions. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

When a claim challenges a mixed question of fact and law, the state court's determinations are entitled to deference "unless the findings were 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Martinez*, 644 F.3d at 242 (quoting § 2254(d)(1)). Generally, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) ("When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter."). When, however, "a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98; *see also Salts v. Epps*, 676 F.3d 468, 480 n.46 (5th Cir. 2012) ("[W]here a state court summarily denies a petitioner's motion, and provides no statement of its reasons, 'the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'") (quoting *Harrington*, 562 U.S. at 98).

## B.    Self-Represented Litigants

Bargas represents himself. This court is required to construe petitions filed by self-represented litigants liberally. *See Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction.") (citations omitted); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) ("[Petitioner]'s pro se application for habeas relief is entitled to liberal construction.") (citations

omitted).  Pleadings by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III.    Discussion

### A.    Sufficiency of the Evidence

Bargas claims that the evidence was insufficient to support a finding of guilty because no physical evidence was introduced at trial.  (*See* Ground Three and Ground Four, Docket Entry No. 1 at 7; Docket Entry No. 3 at 1).  Bargas also argues that the trial court erred when it denied the defense motion for an instructed verdict.  (*See* Ground Eight, Docket Entry No. 1 at 8).

On federal habeas corpus review, whether the evidence is sufficient to support a state court conviction is governed by the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires a reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).  The Supreme Court has emphasized "that *Jackson* claims face a high bar in federal habeas corpus proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). A federal habeas corpus court questions only whether the state court's assessment of the already-strict *Jackson* standard was unreasonable.  *See* 28 U.S.C. § 2254(d)(1).  Together, *Jackson* and the AEDPA require a "double dose of deference that can rarely be surmounted."  *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

In conducting its review under this doubly deferential standard, the court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim.  *See Ylst*, 501 U.S. at 803; *Wilson v. Sellers*, 584 U.S. 122, 128–32 (2018).  That judgment was issued by the

10

Fourteenth Court of Appeals, which set forth the elements of the offense and concluded that there was more than sufficient evidence to support the convictions.    The court set forth the following analysis:

### A. Is the evidence legally and factually sufficient to support the convictions?

In two issues, appellant challenges the sufficiency of the evidence supporting his convictions.[4]  Appellant first contends the trial court erred in denying his motions for instructed verdicts because the State failed to produce evidence of every element of the offenses, specifically the element of digital penetration.  Appellant contends that by improperly denying his motions, the burden of proof shifted from the State to appellant to prove his innocence, which is why he testified as on his own behalf.  Appellant also argues the evidence is factually insufficient because no medical evidence and no other witnesses support the allegations.  Appellant complains that Tina's testimony is unreliable because she used unsophisticated terminology for genitalia and sexual acts, and she could not recall where she lived that summer, or anyone named Alex, or making outcry against Alex when appellant presented contrary evidence.

> [4]In two separate issues, appellant challenges the factual sufficiency of the evidence and contends the trial court erred in denying his motions for instructed verdicts.  A challenge to the trial court's denial of a motion for an instructed verdict is, in effect, a challenge to the legal sufficiency of the evidence.  *Williams v. State,* 937 S.W.2d 479, 482 (Tex. Crim. App. ins1996).  We review these two separate issues together.

A challenge of the trial court's denial of a motion for instructed verdict is a challenge to the legal sufficiency of the evidence to support the conviction.  *See Williams v. State,* 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).  When evaluating a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict.  *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence.  *Wicker v. State,* 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt.  *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence."  *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or disbelieve any portion of the witnesses' testimony.  *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party.  *Turro v. State,* 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm.  *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

In contrast, when evaluating a challenge to the factual sufficiency of the evidence, we view all the evidence in a neutral light and inquire whether we are able to say, with some objective basis in the record, that a conviction is "clearly wrong" or "manifestly unjust" because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State,* 204 S.W.3d 404, 414–17 (Tex. Crim. App. 2006). It is not enough that this court harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence, and this court cannot declare that a conflict in the evidence justifies a new trial simply because it disagrees with the jury's resolution of that conflict. *Id.* at 417. If this court determines the evidence is factually insufficient, it must explain in exactly what way it perceives the conflicting evidence greatly to preponderate against conviction. *Id.* at 414–17. The reviewing court's evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *See Fuentes,* 991 S.W.2d at 271. In conducting a factual-sufficiency review, we discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly (1) causes penetration of the female sexual organ of a child younger than fourteen years of age, and (2) causes the sexual organ of a child younger than fourteen years of age to contact the person's sexual organ. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(iii), (2)(B), 22.011(c)(1), (2) (Vernon Supp. 2002). One indictment alleged that, on or about July 15, 2003, appellant knowingly and intentionally caused the penetration of Tina's female sexual organ with his finger. The other indictment alleged that, on or about July 15, 2003, appellant knowingly and intentionally caused Tina's sexual organ to contact appellant's sexual organ. The "on or about" language in the indictments permits the State to prove the offenses occurred on any date that is prior to presentment of the indictment and within the statutory limitations period. *Garcia v. State,* 981 S.W.2d 683, 685–86 (Tex. Crim. App. 1998). An indictment with this language gives a defendant notice that he must be prepared to defend against the alleged act of criminal misconduct within the applicable statute of limitations. *See id.* at 686. As evidence contrary to the verdict, appellant cites conflicting testimony about where Tina lived that summer and Tina's tendency to identify dates of abuse by referencing which home she lived in at the time. Although appellant presented testimony that he did not live with Tina that summer, the State offered contrary evidence through Hernandez and Tina, despite her inability to pinpoint exact dates. We presume the jury, when faced with conflicting evidence, resolved conflicts in favor of the prevailing party. *Turro,* 867 S.W.2d at 47. The jury, as a rational trier of fact, could have determined beyond a reasonable doubt that the State proved the offenses had occurred on a date prior to presentment of the indictment and within the statutory limitations period. Therefore, we find no merit in appellant's legal-sufficiency challenge. *See McDuff,* 939 S.W.2d at 614.

Additionally, Tina's testimony alone is sufficient to support the convictions for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); *Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt); *Satterwhite v. State,* 499 S.W.2d 314, 315 (Tex. Crim. App. 1973) (holding unsophisticated testimony that appellant placed "his male organ into her private parts" was sufficient to sustain conviction); *Jensen v. State,* 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The record reflects that Tina gave detailed descriptions of several incidents in Baytown involving appellant's hands and sexual organ, penetration, and sexual contact. Tina indicated on anatomically correct dolls the "private parts," "behind," and "chest" to support her statements regarding appellant's actions. She identified the dates of abuse by naming which home she lived in with appellant at the time of the incidents. Despite her unsophisticated terminology and rough time-frame of the events, Tina's detailed account of the sexual abuse, even if unsupported by any other evidence, would be sufficient to support appellant's convictions for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Villalon,* 791 S.W.2d at 134; *Satterwhite,* 499 S.W.2d at 315; *Jensen,* 66 S.W.3d at 534. Furthermore, Tina's outcry testimony retains probative value even if other evidence contradicts the outcry statement, especially in light of additional evidence from other witnesses, such as Bohannon and Kleinpeter, that tends to corroborate Tina's testimony. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding that outcry evidence, even if contradicted at trial, retains probative value sufficient enough to prove an essential element of indecency with a child). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence," and the jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Fuentes,* 991 S.W.2d at 271; *Sharp,* 707 S.W.2d at 614. Moreover, physical evidence is not required when, as in this case, the complainant provides ample testimony to establish that a sexual assault occurred. *Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Tinker v. State,* 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The jury heard Tina's testimony and weighed Tina's imperfect perception of time[5] as to when the abuse occurred, Tina's use of unsophisticated terminology,[6] and her alleged inability to recall making an outcry of abuse by "Alex." Because Tina provided detailed testimony sufficient to establish that appellant committed aggravated sexual assaults against her, medical evidence is not required. *See Tinker,* 148 S.W.3d at 669. To the extent that Tina's testimony contradicts that of appellant's, the jury, as trier of fact, held the ultimate authority to weigh the credibility of the witnesses and the testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Burks v. State,* 876 S.W.2d 877, 909 (Tex. Crim. App. 1994). The jury judged the credibility of the witnesses and reconciled conflicts in the testimony, and could have accepted or rejected any or all of the evidence on either side. *See Fuentes,* 991 S.W.2d at 271; *Sharp,* 707 S.W.2d at 614. In a legal-sufficiency review, any inconsistencies in the testimony should be resolved in favor of the jury's verdict. *Johnson v. State,* 815 S.W.2d 707, 712 (Tex. Crim. App.

1991). When viewed in the light most favorable to the verdict, the jury, as a rational trier of fact, could have determined that the essential elements of the offenses were met beyond reasonable doubt. *See McDuff,* 939 S.W.2d at 614. Thus, the trial court was correct to deny appellant's request for an instructed verdict. *See Rangel v. State,* 199 S.W.3d 523, 538 (Tex. App.—Fort Worth 2006, no pet.). When viewed in a neutral light, we cannot say, with some objective basis in the record, that appellant's convictions are "clearly wrong" or "manifestly unjust" because the great weight and preponderance of the evidence contradicts the jury's verdict. *See Watson,* 204 S.W.3d at 414–17.

> [5]The jury also heard Bohannon's testimony explaining that children of Tina's age often do not have an accurate perception of time and that Tina's imperfect perception of time could be attributed to her delayed emotional development. The jury was able to accept or discount Bohannon's testimony reasoning why Tina could not accurately pinpoint dates of the assaults. *See Fuentes,* 991 S.W.2d at 271; *Sharp,* 707 S.W.2d at 614.

> [6]The jury also heard Bohannon's testimony explaining it is not unusual for ten-year-old children to not use proper terminology for male and female genitalia. Because children use unsophisticated language when describing sexual acts, the jury may account for this factor when assessing the weight of children's testimony. *See Wallace v. State,* 52 S.W.3d 231, 235 (Tex. App.-El Paso 2001, no pet.) (concluding that where children's lack of sophistication in accurately describing parts of the body renders evidence legally sufficient to establish guilt, the same rule should apply in a factual sufficiency review).

The evidence presented is legally and factually sufficient to support appellant's convictions for aggravated sexual assault.[7]  *See Watson,* 204 S.W.3d at 414–17; *McDuff,* 939 S.W.2d at 614; *Villalon,* 791 S.W.2d at 134. Accordingly, we overrule appellant's third and seventh issues.

> [7]Because we find the trial court properly denied appellant's motions for instructed verdicts, we need not reach the merits of appellant's contention that in denying the instructed verdicts, the trial court improperly shifted the burden of proof from the State to appellant.

*Bargas v. State*, 252 S.W.3d 876, 886–89 (Tex. App. 2008).

As the state court noted, Tina (the victim) testified that Bargas removed her clothing and touched her private areas. (*See* Docket Entry No. 25-3 at 197–201). She testified that this occurred " a lot." (*Id.* at 201). She also testified that Bargas inserted his "private part" into her "front" and "back" "private parts." (*Id.* at 202–05). She testified that this occurred approximately 30 different times. (*Id.* at 205). Tina identified the approximate dates of the abuse by identifying which home

14

she lived in when the incidents occurred. (*See, e.g.*, *id.* at 197, 205). Under Texas law, the victim's testimony alone is sufficient to support a conviction for sexual assault. *See* Tex. Code Crim. Proc. art. 38.07.

Bargas does not offer argument in support of this claim, let alone refute the state court's findings of fact, which are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981) (observing that the presumption of correctness "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"). Under these circumstances, the state court's well-reasoned opinion is entitled to "great weight" on federal habeas review. *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310 n.15); *see also Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.").

To the extent that Bargas asks this court to reweigh the evidence and decide if the jury's decision was correct, he asks for relief "beyond the scope of review" permitted under *Jackson*. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). A federal habeas court may not substitute its view of the evidence for that of the fact-finder. *See Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (citation omitted). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).

Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Bargas fails to show that the state court's decision was objectively unreasonable or that he is entitled to relief on this claim.

**B.** **The Consistency of the Judgments of Conviction and the Constitutionality of the Stacked Sentences**

Bargas asserts that the judgments and sentences are inconsistent in a way that makes the trial court's stacking of the sentences improper and unconstitutional. (*See* Ground Eleven, Docket Entry No. 1 at 8; Docket Entry No. 3 at 1).

The Fourteenth Court of Appeals considered this argument on direct appeal and rejected it:

> **E. Did the trial court err in rendering inconsistent judgments, which subsequently resulted in improper stacking of the sentences and violated appellant's due process rights?**
>
> Appellant contends in his tenth issue that the trial court's judgments are inconsistent and, thus, render the stacking of the sentences improper and unconstitutional as a violation of his due process rights. Specifically, appellant complains the judgments in his consolidated trial are inconsistent because one judgment specifies that the sentences "shall run concurrently" and the other judgment specifies that the sentences "shall run consecutively."
>
> With respect to appellant's argument that his due-process rights were violated by the inconsistent judgments and improper stacking, appellant provides no analysis or citations to the record or legal authorities. To present an issue for appellate review "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Appellant has not addressed any of the governing legal principles or applied them to the facts of this case. *See King v. State,* 17 S.W.3d 7, 23 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). Appellant's brief contains only a heading for his tenth issue indicating that stacking the sentences is unconstitutional as a violation of due process, but statements which cite no authority present nothing for appellate review. *Id.; see also Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App.1992). Therefore, appellant has waived this issue. *See* Tex. R. App. P. 38.1(h); *King,* 17 S.W.3d at 23; *Vuong,* 830 S.W.2d at 940.
>
> Under article 42.08 of the Code of Criminal Procedure, the trial judge has the discretion to cumulate the sentences for two or more convictions. Tex. Code Crim. Proc. Ann. art. 42.08(b) (Vernon 2006); *Smith v. State,* 575 S.W.2d 41, 41 (Tex. Crim. App.1979); *Harvey,* 821 S.W.2d at 392. Cumulative sentencing is permitted only as provided by statute. *Cook v. State,* 824 S.W.2d 634, 641 (Tex. App.-Dallas 1991, pet. ref'd) (per curiam). When a defendant has been convicted in two or more cases, the trial court has discretion to order the judgment and sentence in the second conviction to either (1) begin to run after the judgment and sentence imposed in the

16

preceding conviction ceased to operate, or (2) run concurrently with the judgment and sentence imposed in the preceding conviction. Tex. Code Crim. Proc. Ann. art. 42.08(a). When the convictions arise out of the "same criminal episode" and the cases are tried together, the sentences must run concurrently unless, as in this case, the convictions are for certain, specific offenses—like aggravated sexual assault of a child—in which case the trial court may exercise its discretion to cumulate or stack the sentences. *See* Tex. Penal Code Ann. § 3.03 (indicating that sentences for convictions under Texas Penal Code §§ 22.011 and 22.021 shall run concurrently or consecutively); *Nicholas v. State,* 56 S.W.3d 760, 765 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). We review the trial court's decision to stack or cumulate sentences for an abuse of discretion. *Nicholas,* 56 S.W.3d at 765. So long as the law allows the imposition of cumulative sentences, the trial judge has absolute discretion to stack sentences. *Id.*

Appellant contends the sentences rendered in the judgments are inconsistent. The record contains two "Motions to Cumulate" and the accompanying signed orders granting the motions. The judgment for cause number 1045924 indicates that appellant, who is convicted of aggravated sexual assault of a child, would be sentenced to confinement for a period of sixty years. The judgment for cause number 1045925 indicates that appellant would be sentenced to confinement for a period of sixty years, which is a sentence that is to run consecutively. The judgment for Cause Number 1045925 is accompanied by a special finding or order that the sentence will run consecutively and "shall begin only when the judgment and sentence in the following case has ceased to operate: 1045924." Furthermore, the record indicates that the trial court orally pronounced that for Cause Number 1045924, appellant will "serve 60 years in accordance with the laws of the State of Texas, and that upon completion of that sentence, [appellant will] then begin to serve 60 years in the Texas Department of Criminal Justice Institutional Division" as assessed for conviction in Cause Number 1045925. When there is a variation between the oral pronouncement and the written memorialization of the sentence, the oral pronouncement controls. *Coffey v. State,* 979 S.W.2d 326, 328 (Tex. Crim. App.1998). In this case, the cumulation order on the judgment for Cause Number 1045925 is consistent with the trial court's oral pronouncement of the sentence. Moreover, the cumulation order, along with the judgment in Cause Number 1045925 is "sufficiently specific to allow the Texas Department of Criminal Justice–Institutional Division ... to identify the prior with which the newer conviction is cumulated." *Ex parte San Migel,* 973 S.W.2d 310, 311 (Tex. Crim. App. 1998). When, as in this case, the same court sentences the defendant in both causes, the cumulation order is sufficient if it simply makes reference to the previous cause number. *Hamm v. State,* 513 S.W.2d 85, 86–87 (Tex. Crim. App.1974); *Edwards v. State,* 106 S.W.3d 833, 846 (Tex. App.-Dallas 2003, pet. ref'd); *Faison v. State,* 59 S.W.3d 230, 238 (Tex.App.-Tyler 2001, pet. ref'd) (holding that the cumulation order need not contain anything more than the cause number of the previous conviction if the record contains evidence that the same judge presided over the previous and subsequent convictions). Because the judgment in Cause Number 1045925 renders a sixty-year sentence under that cause

number that "shall run consecutively and shall begin only when the judgment and
sentence in the following case has ceased to operate: 1045924," and the record
reflects the same judge presided over both convictions, there is no inconsistency in
the judgments. The trial court did not abuse its discretion in rendering the sentences
to run consecutively. *Nicholas,* 56 S.W.3d at 765. Therefore, we overrule
appellant's tenth issue.

*Bargas*, 252 S.W.3d at 902–03.

The Fourteenth Court of Appeals found that the trial court acted properly in stacking the

sentences. "Whether the trial court should stack sentences for multiple convictions is a matter of

state law." *McBreen v. Quarterman*, No. 3:06-CV-2154BECF, 2009 WL 1181062, at *20 (N.D.

Tex. Apr. 30, 2009) (citations omitted). "It is beyond the scope of federal habeas review to review

the correctness of the state court's interpretation of state law." *Id.* (citing *Young v. Dretke,* 356

F.3d 616, 628 (5th Cir. 2004)). Bargas has failed to show by clear and convincing evidence that

the state court's conclusion was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court, or resulted in a decision based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. This ground for relief is denied.

### C. The Delay in the Trial Court's Ruling on Bargas's Habeas Application

Bargas argues that he was denied due process because the state habeas court took over ten

years to adjudicate his state habeas applications. (*See* Ground Twenty-Two, Docket Entry No. 1

at 10; Docket Entry No. 3 at 2).

This ground for relief must be denied because "alleged infirmities in state habeas

proceedings are not grounds for federal habeas relief." *Brown v. Dretke*, 419 F.3d 365, 378 (5th

Cir. 2005) (citations omitted); *see also Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001) ("A

long line of cases from our circuit dictates that infirmities in state habeas proceedings do not

constitute grounds for relief in federal court.") (internal quotation marks and citations omitted);

18

*Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[E]rrors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.") (internal citations omitted). "That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Rudd*, 256 F.3d at 319. This ground for relief is denied.

### D.   Claims That Allege Errors by the Trial Court

*1.   The claim that the trial court erred by permitting Shelly Bohannon to testify as an outcry witness.*

Bargas claims that the trial court erred when it allowed Shelly Bohannon, a forensic interviewer at the Bridge Children's Advocacy Center,[7] to testify as an outcry witness. (*See* Ground One, Docket Entry No. 1 at 6). Bargas asserts that the victim's maternal grandmother, Gloria Wilson, was the first person to whom the victim reported the abuse and therefore that Ms. Wilson was the only proper outcry witness. (*See id.*).

The intermediate state court of appeals considered and rejected this claim during Bargas's direct appeal:

**1. Did the trial court abuse its discretion in designating the proper outcry witness under article 38.072 of the Texas Code of Criminal Procedure?**

In his first issue, appellant claims reversible error and harm in the trial court's admission of Tina's outcry testimony through Bohannon because, appellant asserts, Bohannon was an improper outcry witness. Appellant complains Wilson is the proper outcry witness, because Wilson was the first to hear Tina report the abuse when Wilson tricked Tina into revealing that appellant had sexually assaulted her. By not offering Wilson as the proper outcry witness, appellant claims, the trial court denied his right to confrontation under the Sixth Amendment of the United States Constitution. A trial court's designation of an outcry witness will be upheld when supported by the evidence. *Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

---

[7] (*See* Docket Entry No. 25-3 at 97).

Under article 38.072 of the Texas Code of Criminal Procedure, some hearsay statements are admissible in prosecuting certain offenses, including aggravated sexual assault of a child, as in this case. Tex. Code Crim. Proc. Ann. art. 38.072, § 1 (Vernon Supp. 2005). This statute applies to "statements that describe the alleged offense" and that "(1) were made by the child against whom the offense was allegedly committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense." *Id.* § 2(a)(1), (2). The Court of Criminal Appeals has construed the statute to apply to the first adult to whom the complainant makes a statement that "in some discernible manner describes the alleged offense." *Garcia,* 792 S.W.2d at 91. To invoke the statute, the statements must be more than words that "give a general allusion" that something in the area of child abuse has occurred. *Id.*

Although appellant contends Wilson is the proper outcry witness, the record reflects that Tina did not describe the alleged offense to Wilson. *See id.* Rather, Wilson learned of the specific details of Tina's sexual abuse from Tina's therapist, Kleinpeter. Tina's statements to Wilson were no more than a general allusion that abuse had occurred. *See id.* Such general allusions, in which the complainant does not describe the abuse in a discernible manner, are not within the purview of article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 91.

Bohannon testified as to Tina's detailed description of appellant's contact with and penetration of Tina's "private areas." In the videotaped interview, Tina describes the abuse in detail to Bohannon by pointing to anatomical diagrams of a male and female body and describing how, when, and where the incidents occurred. According to the record, Bohannon was the first person over eighteen years of age to whom Tina in some discernible manner described the alleged offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 91. Bohannon testified Wilson could not provide information about any abuse beyond a general allegation. Tina's account of the abuse as relayed to Bohannon was more than a general allusion that child abuse had occurred; her statements contained sufficient information about the nature of the acts and the perpetrator to meet the requirements of article 38.072 regarding the proper outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 91; *Reed v. State,* 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd); *Hayden v. State,* 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Schuster v. State,* 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding psychologist was proper outcry witness even though complainant told mother first, but child was so upset that no details were provided). We conclude the trial court did not abuse its discretion in determining that Bohannon was the proper outcry witness. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia,* 792 S.W.2d at 92.

Appellant complains the State misled him into believing Wilson was an outcry witness based on the State's notice. We need not reach the merits of this argument because appellant failed to preserve error by objecting at the outcry hearing. *See* Tex. Code Crim. Pro. Ann. § 38.072; *Garcia v. State,* 907 S.W.2d 635, 637 (Tex.

App.—Corpus Christi 1995), *aff'd,* 981 S.W.2d 683 (Tex. Crim. App. 1998). Even if appellant had preserved error by voicing the complaint he now raises on appeal, he would have suffered no prejudice. *See Brown v. State,* 756 S.W.2d 793, 797 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). The purpose of requiring notice is to prevent the accused from being surprised by the introduction of outcry testimony. *See id.* In this case, the record reflects the State identified both Wilson and Bohannon as potential outcry witnesses and the record is devoid of any evidence of surprise. *See id.*

*Bargas v. State*, 252 S.W.3d 876, 894–96 (Tex. App. 2008).

"Article 38.072 of the Texas Code of Criminal Procedure, also known as the outcry statute, creates a hearsay exception in the prosecution of certain sexual offenses committed against children for the admission of a child's first outcry of sexual abuse to an adult." *Gibson v. State*, 595 S.W.3d 321, 326 (Tex. App.—Austin 2020, no pet.) (citing Tex. Code Crim. Proc. art. 38.072 and *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013)). "The statute applies only to out-of-court statements that (1) 'describe the alleged offense,' (2) are 'made by the child,' and (3) are 'made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense.'" *Bays*, 396 S.W.3d at 581 n.1 (quoting Tex. Code Crim. Proc. art. 38.072, § 2(a)). "To be admissible under Article 38.072, among other requirements, '[t]he statement must be more than words which give a general allusion that something in the area of child abuse is going on; it must be made in some discernible manner and is event-specific rather than person-specific.'" *Gibson*, 595 S.W.3d at 326 (quoting *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011)) (cleaned up). The testimony of the outcry witness is substantive evidence of the crime. *Gibson*, 595 S.W.3d at 326.

The question of who is a proper outcry witness is a matter of Texas evidentiary law. A federal habeas court "does not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (citation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (internal

quotation marks and citation omitted); *Austin v. Davis*, 647 F. App'x 477, 486 (5th Cir. 2016) (per curiam) ("[F]ederal habeas relief is unavailable for state law violations.") (citing *Swarthout*, 562 U.S. at 219); *Romero v. Lumpkin*, No. SA-22-CA-0967-OLG, 2024 WL 2948662, at *5 (W.D. Tex. June 11, 2024) ("It is well settled that claims challenging a state court's determination of state law are not cognizable in a federal habeas corpus proceeding, and that federal courts must defer to the state-court determination of Texas law.") (citations omitted), *certificate of appealability denied sub nom. Romero v. Guerrero*, No. 24-50568, 2025 WL 1984268 (5th Cir. June 6, 2025); *McBride v. Lumpkin*, No. SA-18-CA-0831-DAE, 2024 WL 1219744, at *6 (W.D. Tex. Mar. 21, 2024) ("Petitioner alleges a violation of state law which does not, without more, present an issue of constitutional magnitude. Federal habeas corpus relief is available only for the vindication of rights existing under federal law, not rights existing solely under rules of state procedure or alleged violations of state law."). A state trial court's evidentiary rulings mandate habeas relief only when "errors are so extreme that they constitute a denial of fundamental fairness." *Little*, 162 F.3d at 862 (citation omitted); *see also Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

The state appellate court found that the trial court acted properly in designating Bohannon as the outcry witness. Bargas has failed to show by clear and convincing evidence that this conclusion was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This ground for relief is without merit.

> 2. *The claim that the trial court erred by permitting a non-physician to testify to hearsay statements.*

Bargas argues that the trial court erred when it permitted a non-physician to testify to hearsay statements. (*See* Ground Two, Docket Entry No. 1 at 6). Bargas provides no other

allegations or details in support of this claim. The respondent construes this claim as alleging that the trial court erred when it permitted Tina's therapist to testify about Tina's hearsay statements made in therapy. (*See* Docket Entry No. 29 at 23–26).

When considering this claim on direct appeal, the intermediate appeals court found as follows:

> In his second issue, appellant complains that the trial court erred in permitting Tina's therapist, Kleinpeter, to testify as to hearsay statements Tina made during therapy under Texas Rule of Evidence 803(4). *See* Tex. R. Evid. 803(4) (allowing admission of hearsay statements made for the purpose of obtaining a diagnosis and treatment). Specifically, appellant contends Kleinpeter is not qualified as a medical physician providing treatment to Tina because depression, anxiety, sadness, and tearfulness, for which Kleinpeter treated Tina, are common symptoms of a child whose life is unstable, and, therefore, Tina's statements in therapy with Kleinpeter were not reasonably pertinent to a diagnosis or treatment. Under the abuse-of-discretion standard, a reviewing court will not reverse an 803(4) evidentiary ruling as long as it falls within the zone of reasonable disagreement. *Gregory,* 56 S.W.3d at 183.
>
> Under Rule 803(4), a trial court may allow admission of hearsay statements describing sexual abuse that were made for the purpose of facilitating medical diagnosis or treatment. Tex. R. Evid. 803(4); *Gregory,* 56 S.W.3d at 183. "[I]f the statement is made to another for the purpose of medical treatment, the person to whom the statement is made does not necessarily have to be a 'medical person.'" *Gohring v. State,* 967 S.W.2d 459, 461 (Tex. App.-Beaumont 1998, no pet.); *see Macias v. State,* 776 S.W.2d 255, 259 (Tex. App.-San Antonio 1989, pet. ref'd). Non-physicians, such as licensed therapists like Kleinpeter, may testify under the medical diagnosis and treatment exception. *See* Tex. R. Evid. 803(4); *Gregory,* 56 S.W.3d at 183.
>
> All statements made in the context of counseling may well be relevant to a diagnosis or treatment; however, to be admitted under Rule 803(4), the statements also must be pertinent to the diagnosis or treatment. *Moore v. State,* 82 S.W.3d 399, 413 (Tex. App.-Austin 2002, pet. ref'd) (permitting hearsay statements if "reasonably pertinent to diagnosis or treatment"); *Gregory,* 56 S.W.3d at 183. Therefore, to satisfy Rule 803(4), any hearsay statements must be made for the purpose of and be reasonably pertinent to medical diagnosis or treatment. *Moore,* 82 S.W.3d at 413. Statements regarding abuse made to a psychologist or therapist are made for the purpose of medical diagnosis and treatment. *Macias,* 776 S.W.2d at 259. Because treatment of child abuse includes removing a child from an abusive setting, the identity of the abuser is pertinent to the medical treatment of the child. *Moore,* 82 S.W.3d at 413. Hearsay statements by a suspected child victim of abuse

regarding causation, source of abuse, or describing abusive acts are admissible under Rule 803(4) as being pertinent to the medical treatment of a victim. *Gregory,* 56 S.W.3d at 183; *Moore,* 82 S.W.3d at 413.

The trial court first noted that Kleinpeter is part of the medical profession as a licensed marriage and family therapist. *Gregory,* 56 S.W.3d at 183; *Macias,* 776 S.W.2d at 259. The trial court permitted Kleinpeter's testimony regarding Tina's statements of abuse, but specifically limited Kleinpeter's testimony to recounting only those statements Tina made in the initial discussion of abuse because such statements were necessary for properly diagnosing Tina and developing a course of therapy. Kleinpeter testified to her diagnosis and treatment of Tina's post-traumatic stress disorder. According to Kleinpeter, in Tina's initial discussion of sexual abuse, Tina described the sexual abuse as appellant putting "his thing in her front and back and in her mouth." Kleinpeter testified that Tina, over the course of twenty-four sessions in fifteen months, talked about appellant's sexual abuse every three to four sessions. Kleinpeter's testimony did not include other hearsay statements. Only on cross-examination, in response to appellant's question about the specific details of sexual abuse, did Kleinpeter recount Tina's description of one occasion of abuse with specific detail.

Kleinpeter testified to Tina's statements of abuse at appellant's hands in connection with Kleinpeter's treatment of Tina's post-traumatic stress disorder. *See Gohring,* 967 S.W.2d at 461; *Macias,* 776 S.W.2d at 259. Non-physicians, such as licensed therapists like Kleinpeter, may testify to causation and source of abuse under the medical-diagnosis-and-treatment hearsay exception. *See* Tex. R. Evid. 803(4); *Gregory,* 56 S.W.3d at 183. Tina's statements regarding the sexual acts and appellant's identity were for the purpose of and pertinent to Kleinpeter's treatment and diagnosis of Tina. *See Macias,* 776 S.W.2d at 259; *Gregory,* 56 S.W.3d at 183. Thus, we conclude the trial court did not abuse its discretion in permitting Kleinpeter's testimony regarding Tina's hearsay statements made in the initial discussion of abuse. *See Gohring,* 967 S.W.2d at 461.

Even if the trial court had erred in admitting this testimony, the error would be harmless because the same information was properly admitted without appellant's objection through other witnesses. *See Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Given Bohannon's substantially similar testimony and Tina's own detailed testimony, both admitted without appellant's objection, any error in admitting Kleinpeter's testimony of Tina's hearsay statements of abuse would be harmless. *See id.; Jones v. State,* 111 S.W.3d 600, 604–05 (Tex. App.-Dallas 2003, pet. ref'd). Accordingly, we overrule appellant's second issue.

*Bargas*, 252 S.W.3d at 896–97.

Bargas takes issue with the trial court's determination that Kleinpeter could testify as to

hearsay statements Tina made during therapy under Texas Rule of Evidence 803(4). Bargas's

argument is over the admissibility of evidence under Texas state law.  As discussed, a federal habeas court "does not sit to review the mere admissibility of evidence under state law."  *Little*, 162 F.3d at 862 (citation omitted); *see also Swarthout*, 562 U.S. at 219; *Austin*, 647 F. App'x at 486; *Romero*, 2024 WL 2948662, at *5; *McBride*, 2024 WL 1219744, at *6.

The state appellate court found that the trial court did not err in determining that Kleinpeter could testify under the Texas Rules of Evidence.  Bargas has failed to show by clear and convincing evidence that this conclusion was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This ground for relief is without merit.

> 3.   *The claim that the trial court erred by permitting a police detective to testify about findings of medical exams in child abuse cases.*

Bargas alleges that the trial court erred when it allowed a police detective to testify about the findings of medical exams in child abuse cases.  (*See* Ground Five, Docket Entry No. 1 at 8).  Bargas argues that the detective is not a medical doctor and should not have been "allowed to make assumptions or statements outside his field of expertise."  (*Id.*).

In rejecting this claim on direct appeal, the Fourteenth Court of Appeals found as follows:

In his fourth issue, appellant complains the trial court abused its discretion in permitting Detective Harrison to testify that medical exams in child-abuse cases frequently yield normal results because the law enforcement officer was not a qualified expert to discuss such medical results in violation of Texas Rules of Evidence 701 and 702.  Appellant specifically complains of the following exchange at trial:

> [THE PROSECUTOR]: And based on your experience, how many - specifically in child abuse, how many times after medical exams are done do you find normal findings, based on your experience?
>
> ...
>
> [HARRISON]: It is common for me to find normal findings in my investigations for medical results for child abuse.

25

A trial court's ruling on admissibility or exclusion of evidence will be upheld if the record reasonably supports the ruling. *Fairow v. State,* 943 S.W.2d 895, 901 (Tex. Crim. App. 1997). Under Rule 702, if a witness possesses scientific, technical, or other specialized knowledge that will assist a fact finder, and if the witness is qualified as an expert by knowledge, skill, experience, training, or education, then that expert may testify with an opinion. Tex. R. Evid. 702; *Jensen,* 66 S.W.3d at 542. Under Rule 701, once personal knowledge is established, a person, as a lay witness, may offer an opinion based on her perception to help a fact finder understand testimony or determine a fact in issue. *See* Tex. R. Evid. 701; *Solomon v. State,* 49 S.W.3d 356, 364 (Tex. Crim. App. 2001). An officer's personal knowledge may come from past experiences. *See, e.g., Thomas v. State,* 916 S.W.2d 578, 580–81 (Tex. App.-San Antonio 1996, no pet.).

Presuming without deciding that Detective Harrison was not a proper witness to discuss the frequency of certain medical results in child-abuse cases, the error was harmless because the same facts were established by other admissible evidence introduced without objection. *See Willis v. State,* 785 S.W.2d 378, 383 (Tex. Crim. App. 1989). The record reflects that Livermore introduced the results from Tina's medical examination and explained that the absence of physical evidence of sexual abuse is not unusual. Therefore, even if the trial court erred in admitting Detective Harrison's testimony, the error was rendered harmless with the introduction of Livermore's testimony. *See id.* Because error, if any, provides no basis for reversal, we overrule appellant's fourth issue.

*Bargas*, 252 S.W.3d at 897–98.

Once again, Bargas challenges the trial court's determination on whether a particular witness—here, Detective Harrison—could give certain testimony under the Texas Rules of Evidence. Violations of state law do not set out valid grounds for federal habeas corpus relief. *See Little*, 162 F.3d at 862; *Swarthout*, 562 U.S. at 219; *Austin*, 647 F. App'x at 486; *Romero*, 2024 WL 2948662, at *5; *McBride*, 2024 WL 1219744, at *6.

The state appellate court found that even assuming, without deciding, that Detective Harrison was not a proper witness, any error was harmless because the same facts were established by other admissible evidence that was introduced without objection. This other evidence included the results from Tina's medical examination. "It is well established that error in admitting evidence will be found harmless when the evidence is cumulative, meaning that substantial evidence

supports the same facts and inferences as those in the erroneously admitted evidence." *United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011), *as revised* (Dec. 27, 2011).  Bargas has failed to show by clear and convincing evidence that the state appellate court's conclusion was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This ground for relief is without merit.

          4.     *The claim that the trial court erred by permitting testimony of extraneous offenses at the guilt/innocence phase of trial.*

Bargas asserts that the trial court erred by permitting testimony of extraneous offenses at the guilt/innocence phase of trial.  (*See* Ground Six, Docket Entry No. 1 at 8).  He argues that he was not charged or convicted of other extraneous acts that were alleged by Tessa Griffiths[8] (the victim's sister), who recanted her testimony more than once.  (*Id.*).  He asserts that a limiting instruction about extraneous offenses should have been given when the evidence was first introduced and in the final jury charge.  (*See* Ground Six, Docket Entry No. 3 at 1).

The state appeals court considered this issue during Bargas's direct appeal.  After a thorough analysis of the claim, the appeals court found that the trial court did not abuse its discretion:

**B. Did the trial court abuse its discretion in admitting extraneous-offense evidence?**

In his fifth issue, appellant complains that the trial court erred in admitting extraneous-offense evidence that appellant sexually assaulted Alice, his former live-in girlfriend's fourteen-year-old daughter.  Appellant argues that this ruling was in violation of Texas Rules of Evidence 404(b) and 403.  *See* Tex. R. Evid. 403 (stating trial court may exclude relevant evidence if its probative value is

---

        [8] The petitioner spells this person's name as "Tessa Griffis."  (*See* Docket Entry No. 1 at 9). However, the trial transcript included with the state court record spells her name as "Tessa Griffiths."  (*See* Docket Entry No. 25-4 at 85).

substantially outweighed by the danger of unfair prejudice); Tex. R. Evid. 404(b) (stating evidence of other crimes, wrongs, or acts may be admissible for some purposes). A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's ruling was within the zone of reasonable disagreement, there is no abuse of discretion. *Id.*

## 1. Texas Rule of Evidence 404(b)

Extraneous-offense evidence of other crimes, wrongs, or acts may not be admitted in order to show that the defendant acted in conformity with bad character. Tex. R. Evid. 404(b). Extraneous-offense evidence, if relevant apart from proving character conformity, may be admitted for other purposes including proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. Tex. R. Evid. 404(b); *Moses,* 105 S.W.3d at 626. Though evidence of other crimes, wrongs, or acts may have a tendency to show character conformity, extraneous-offense evidence that has relevance apart from character conformity, such as for rebuttal of a defensive theory, may be admissible. *See* Tex. R. Evid. 404(b); *Moses,* 105 S.W.3d at 626 n. 4, 628; *Powell v. State,* 63 S.W.3d 435, 438–39 (Tex. Crim. App. 2001); *Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex. Crim. App.1990) (op. on reh'g).

The Texas Court of Criminal Appeals has held that extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination, as in this case. *See Ransom v. State,* 920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (op. on reh'g) (concluding trial court did not err in admitting evidence to rebut defensive theory raised on cross-examination of State's witnesses); *Powell,* 63 S.W.3d at 439 (concluding trial court did not err in admitting evidence to rebut defensive theories raised in opening statement). However, the fact that the State's witnesses were cross-examined does not, in and of itself, authorize the introduction of extraneous-offense evidence. *Caldwell v. State,* 477 S.W.2d 877, 879 (Tex. Crim. App. 1972); *Webb v. State,* 36 S.W.3d 164, 181 n. 9 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (en banc); *Bass v. State,* 222 S.W.3d 571, 576, 578 (Tex. App.-Houston [14th Dist.] 2007, pet. granted); *Patterson v. State,* No. 05–06–00808–CR, 2007 WL 4200998, at *13 (Tex. App.-Dallas Nov.29, 2007, no pet. h.) (not designated for publication). A challenge to the complainant's credibility on cross-examination does not automatically open the door to extraneous-offense evidence.[8] *See Caldwell,* 477 S.W.2d at 879; *DeLeon v. State,* 77 S.W.3d 300, 314 (Tex. App.-Austin 2001, pet. ref'd). Rather, the responses elicited from the State's witnesses on cross-examination, must be sufficient to construct a defensive theory before the State may introduce extraneous-offense evidence in rebuttal. *Walker v. State,* 588 S.W.2d 920, 922–23 (Tex. Crim. App. 1979); *DeLeon,* 77 S.W.3d at 314. To raise a defensive theory sufficient to open the door to the introduction of the extraneous-offense evidence, the cross-examination responses must undermine the State's testimony and effectively place in controversy a fact that testimony was offered to prove. *See Crank v. State,* 761 S.W.2d 328, 341 (Tex. Crim. App. 1988), *overruled*

*on other grounds*, *Alford v. State,* 866 S.W.2d 619, 624 n. 8 (Tex. Crim. App. 1993); *Clark v. State,* 726 S.W.2d 120, 122 (Tex. Crim. App. 1986); *Albrecht v. State,* 486 S.W.2d 97, 102 (Tex. Crim. App. 1972); *see also Rankin v. State,* 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) (requiring extraneous offense to be relevant to a "fact of consequence"); *Webb,* 36 S.W.3d at 180.  In *Bass v. State,* this court held that a fabrication defensive theory, without other legitimate, permissible 404(b) purposes, is not sufficient to permit the introduction of extraneous-offense evidence in rebuttal.  222 S.W.3d at 578 (Tex. App.-Houston [14th Dist.] 2007, pet. granted); *accord Dennis v. State,* 178 S.W.3d 172, 178 n. 1 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd) (indicating that, to construct a defensive theory in cross-examination that implicates a defensive theory beyond mere fabrication, an accused should offer not just a motive, but evidence of a reason to lie).

> [8]*Accord Caldwell,* 477 S.W.2d at 879 ("To hold that the cross-examination of this prosecutrix would permit the introduction of an extraneous offense would be tantamount to holding that such testimony would be admissible in any case where a defendant's counsel exercises the constitutional right of cross-examination. That is not and should not be the law."); *Bass,* 222 S.W.3d at 578 (holding that because the State did not identify any legitimate reason for allowing extraneous-offense evidence beyond mere fabrication, such extraneous-offense evidence held no relevance apart from proving appellant's character or actions in conformity therewith).

In sexual-assault cases, extraneous-offense evidence may be admitted under Rule 404(b) to rebut defensive theories of retaliation or that the defendant is an innocent victim of a "frame-up."  *See Wheeler v. State,* 67 S.W.3d 879, 887 n. 22 (Tex. Crim. App. 2002) (admitting extraneous-offense evidence to rebut defensive theory of a frame-up when extraneous misconduct is similar to the charged offense and when the witness lacked motive to lie); *Moses,* 105 S.W.3d at 626, 627 (permitting evidence of extraneous offenses to rebut a retaliation defense).  This court in *Bass v. State* examined the differences among fabrication, a frame-up theory, and a retaliation theory.  222 S.W.3d at 576–77.  The *Bass* court stated that, in a fabrication theory, the defendant contends only that the complainant is making up the allegations.  *See id.*  The *Bass* court stated that, though both frame-up and retaliation involve an element of fabrication, a frame-up theory suggests conspiracy against a defendant that is motivated by money or revenge, while retaliation involves a defendant's assertion that "a party did something in retaliation for an action."[9]  *Id.; see Wheeler,* 67 S.W.3d at 887 (involving defensive theory of "conspiracy or frame-up motivated by greed" or money); *Moses,* 105 S.W.3d at 627 (involving a retaliation defensive theory); *see also Dennis,* 178 S.W.3d at 178 (involving a frame-up defensive theory motivated by anger or revenge); *Blackwell v. State,* 193 S.W.3d 1, 12 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd) (involving a frame-up defensive theory motivated by "bad blood" among family members); *Townsend v. State,* 776 S.W.2d 316, 318 (Tex. App.-Houston [1st Dist.] 1989, writ ref'd) (involving a defensive theory motivated by complainant's anger).

[9]The facts of *Bass* are different from those in the case at hand because the only defensive theory raised at trial in *Bass* was fabrication, for which the *Bass* court determined extraneous-offense evidence cannot be admitted. *See Bass,* 222 S.W.3d at 578; *see also Webb,* 36 S.W.3d at 180.

By his cross-examination of both Tina and Kleinpeter, appellant sought to establish a defensive theory that Tina's allegations were fabricated and based on the premise that she no longer wanted to live with appellant's physical abuse and temper.[10]  *See Townsend,* 776 S.W.2d at 318 (involving extraneous-offense evidence to rebut a defensive theory that the complainants fabricated sexual-abuse allegations out of anger because appellant did not take them on a trip); *see also Dennis,* 178 S.W.3d at 178 (involving a frame-up defensive theory that the allegations were fabricated because the complainant was angry for being disciplined).   Through his cross-examination of Tina, appellant connected Tina's allegations to specific acts of punishment imposed by appellant in the form of physical abuse or household chores.  *See Patterson,* 2007 WL 4200998, at *13; *DeLeon,* 77 S.W.3d at 314. Appellant offered both a motive for Tina to fabricate the allegations and evidence, through Tina's and Kleinpeter's testimony, of Tina's reason to lie, i.e. Tina was upset about living with appellant's temper and physical abuse.  *See Dennis,* 178 S.W.3d at 178 n. 1; *Townsend,* 776 S.W.2d at 318.  Appellant did more than merely impeach Tina's credibility; through the responses elicited from Tina and Kleinpeter during cross-examination, appellant opened the door to extraneous-offense evidence to rebut appellant's defensive theory of retaliation.  *See Dennis,* 178 S.W.3d at 178 n. 1; *see also Walker,* 588 S.W.2d at 922; *DeLeon,* 77 S.W.3d at 314; *Townsend,* 776 S.W.2d at 318.

[10]In response to appellant's questions on cross-examination, Tina admitted appellant hit her, had a temper, and mistreated her to the point that she did not want to live with appellant anymore.  In appellant's cross-examination of Tina regarding her alleged accusations of sexual abuse by "Alex," appellant's trial counsel justified this line of questioning on that subject by stating, "My point is, in [Tina's] mind, she knows that if she makes a sexual abuse claim, she won't have to go back to that house."  Appellant elicited similar information from Kleinpeter on cross-examination by asking several different times whether Kleinpeter understood that given appellant's unpleasant living conditions, Tina "might even lie" or "say almost anything" to avoid returning to his home.

The State requested, outside of the jury's presence, that Alice's testimony be admitted for the Rule 404(b) purpose of rebutting appellant's defensive theory raised in appellant's cross-examination of Tina—that she fabricated the allegations to retaliate against appellant's physical abuse and to avoid living with him.   The trial court allowed Alice's extraneous-offense testimony in light of this cross-examination, specifically finding that the probative value of the evidence outweighed the prejudicial effect.  The State then elicited testimony from Alice that on two prior occasions, while Alice was a pre-teen and living in the same home as

appellant, appellant twice touched her chest and rubbed her stomach in bed, which made her feel "weird."

The Court of Criminal Appeals has held that a trial court does not abuse its discretion in admitting extraneous-offense evidence to rebut retaliation when raised as a defensive theory. *Moses,* 105 S.W.3d at 627; *see Bass,* 222 S.W.3d at 577. The record reflects Tina's responses to appellant's cross-examination plausibly fit within a defensive theory of retaliation in that Tina could have fabricated the allegations to retaliate against appellant for his physical abuse and to avoid returning to appellant's care. *See Moses,* 105 S.W.3d at 627; *Townsend,* 776 S.W.2d at 318. Appellant's cross-examination of Kleinpeter elicited essentially the same information that Tina did not want to live with appellant because of his physical abuse. The State raised the defensive theory of retaliation as a permissible 404(b) purpose for which to present Alice's relevant extraneous-offense evidence, and the trial court granted the State's request "in light of defense's cross [examination]." *See Moses,* 105 S.W.3d at 627; *Ransom,* 920 S.W.2d at 301. Under *Moses,* the trial court did not abuse its discretion in determining Alice's extraneous-offense testimony was relevant rebuttal evidence to show that Tina was not motivated by retaliation in making the sexual-abuse allegations against appellant. *See Moses,* 105 S.W.3d at 627.

## 2. Texas Rule of Evidence 403

Even if relevant evidence is offered and admissible under Rule 404(b), a trial court nonetheless should exclude it from evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Moses,* 105 S.W.3d at 626; *Montgomery,* 810 S.W.2d at 387. Courts should balance the following factors under a Rule 403 analysis: (1) the strength of the evidence in making a fact more or less probable, (2) the potential of the extraneous-offense evidence to impress the jury in some irrational but indelible way, (3) the amount of time the proponent needed to develop the evidence, and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Mozon v. State,* 991 S.W.2d 841, 847 (Tex. Crim. App.1999). When, as in this case, the record is silent as to the trial court's balancing of these factors, we presume the trial court conducted the balancing test. *See Williams v. State,* 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

The first of the factors, the strength of the evidence to make a fact of consequence more or less probable, weighs strongly in favor of admissibility. The extraneous-offense evidence was probative to rebut appellant's theory that Tina's allegations were fabricated in retaliation for appellant's abuse. *See Wheeler,* 67 S.W.3d at 888. Alice's testimony contains similarities to Tina's testimony in that both involve appellant sexually touching a pre-teen girl living in the same residence as appellant at the time of the touching. *See Dennis,* 178 S.W.3d at 181. Alice's testimony, that appellant touched another girl in a similar manner, undermines appellant's theory that Tina fabricated the allegations against him as retaliation. *See id.* Because Alice's extraneous-offense testimony rebuts appellant's defensive theory of

31

retaliation, the admission of this evidence makes it less likely Tina's allegations are the result of retaliation. This evidence also makes the fact of consequence, that Tina fabricated the allegations out of retaliation, less probable in that appellant had similarly touched other pre-teen girls who lived in his home who ostensibly had no reason to fabricate allegations of sexual abuse as a means of retaliation. *See Wheeler,* 67 S.W.3d at 888; *Dennis,* 178 S.W.3d at 181.

As to the second and third factors, though danger lurks in impressing the jury in an indelible way and Alice's testimony is prejudicial and carries some emotional weight, any unfair prejudice is not outweighed by the probative value. *See Dennis,* 178 S.W.3d at 181. The State spent minimal time developing Alice's testimony, and it was neither lengthy nor graphic; it is not likely that the jury was impressed in some irrational or indelible way. *See id.* Therefore, the second and third factors weigh in favor of admissibility.

The fourth factor, requiring balancing of the State's need for such extraneous-offense evidence, is significant. Tina did not tell anyone about her allegations until almost a year and a half after she claimed the abuse occurred, there was no physical evidence, and no other witnesses could support her testimony. Because appellant strongly contested Tina's allegations on a theory of retaliation, the State demonstrated the need to counter appellant's theory that Tina fabricated the allegations in order to avoid living with appellant. *See id.* As such, this factor weighs heavily in favor of admissibility.

A trial court's 403 ruling on admitting extraneous-offense evidence must be upheld so long as it is "within the zone of reasonable disagreement." *Montgomery,* 810 S.W.2d at 391. The trial court admitted Alice's extraneous-offense testimony on the basis that her testimony holds probative value that outweighs any prejudicial effect. *See* Tex. R. Evid. 403. In balancing the above factors in the instant case, the trial court's ruling that any unfair prejudice from Alice's extraneous-offense testimony does not outweigh its probative value is within the zone of reasonable disagreement. *See Williams,* 958 S.W.2d at 195–96; *Moses,* 105 S.W.3d at 626. We conclude the trial court did not abuse its discretion under Rule 403 in admitting the extraneous-offense evidence. *See Moses,* 105 S.W.3d at 627. We overrule appellant's fifth issue.

*Bargas*, 252 S.W.3d at 889–94.

Article 38.37 of the Texas Code of Criminal Procedure "permits admission of evidence that a defendant charged with sexual or assaultive offenses against a child under 17 years of age has committed a separate offense including sexual offenses or assaultive offenses against a child under 17 years of age for any bearing the evidence has on relevant matters, including the character

of the defendant and acts performed in conformity with the character of the defendant." *Haden v. Director, TDCJ-CID*, Case No. 6:19-cv-566, 2022 WL 2345742, at *4 (E.D. Tex. June 29, 2022). A federal habeas court "does not sit to review the mere admissibility of evidence under state law." *Little v*, 162 F.3d at 862. Bargas has not shown a basis for federal habeas relief. The respondent is entitled to dismissal of this claim.

> 5. *The claim that the trial court abused its discretion by limiting the scope of Bargas's direct examination of witnesses about the victim's prior inconsistent statements.*

Bargas argues that the trial court abused its discretion by limiting the scope of the defense's direct examination of witnesses concerning Tina's prior inconsistent statements. (*See* Ground Seven, Docket Entry No. 1 at 8). Bargas claims that Tina accused another person of sexual assault but later "changed her story" when she spoke with her grandmother. (*Id.*). Bargas says he was "denied the questioning of prior accusations." (*Id.*). In support, he further argues:

> Under Texas Law, statute providing circumstances under which sexual offense convictions may be supported by un-corraberrated [sic] testimony of victim is treated as a sufficiency of evidence of the evidence [sic] rule concerning the competency or admissibility of evidence and trial court's failure to comply statutes requirements result in not in remand for new trial but reversal of conviction and remand for entry of acquittal.

(Docket Entry No. 3 at 1).

The Fourteenth Court of Appeals also considered this claim during Bargas's direct appeal. It decided as follows:

**4. Did the trial court abuse its discretion in limiting appellant's direct examination regarding the complainant's prior inconsistent statements?**

In his sixth issue, appellant contends the trial court erred in limiting the direct examination of witnesses regarding Tina's prior inconsistent statements in violation of Rules of Evidence 405(b) and 402. *See* Tex. R. Evid. 405(b) (stating methods of proving character with specific instances of conduct in cases which a person's character or trait is an essential element of the claim, charge, or defense); Tex. R. Evid. 402 (stating that relevant evidence is generally admissible). Through three

defense witnesses, appellant sought to inquire about a prior inconsistent statement Tina made in the videotaped interview with Bohannon.  The statement appellant alleged was inconsistent was Tina's comment that appellant was the only person who had ever touched her sexually.  We review a trial court's ruling on the admissibility of a prior inconsistent statement under an abuse-of-discretion standard.  *Lopez v. State,* 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).

In a hearing conducted outside of the jury's presence, three defense witnesses, Tina's two cousins, Samantha and Amanda, and Tina's paternal aunt Joann Cantu (collectively "the Cantus") testified that Tina told them details of alleged sexual abuse by Alex.  The trial court admitted the testimony in light of Tina's prior statement in the video with Bohannon that appellant was the only person who had touched her in a sexual manner.  However, the trial court limited appellant's direct examination of the Cantus to Tina's statements that "Uncle Alex" "stuck his thing in me" and did not permit further questioning concerning details of how the alleged sexual abuse by Alex occurred.

To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. Tex. R. App. P. 33.1(a); *Saldano v. State,* 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002).  Appellant has not cited and the record does not reveal that appellant raised this Rule 405(b) issue in the trial court.  Because appellant did not object at trial on the basis of Rule 405(b), he has waived his complaint about the admissibility of the excluded evidence under Rule 405(b).  *Johnson v. State,* 803 S.W.2d 272, 292 (Tex. Crim. App. 1990), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681, 685 n. 6 (Tex. Crim. App.1991).

Under Rule 402, appellant complains that the Cantus' testimony was relevant, admissible testimony to rebut Tina's prior statement on the video and to support the following exchange during appellant's cross-examination of Tina:

[APPELLANT'S COUNSEL]: And are you saying that George is the only person who ever did anything to you?

[TINA]: I think.

[APPELLANT'S COUNSEL]: You think.  But you're not sure?

[TINA]: Yes.

[APPELLANT'S COUNSEL]: Is it possible that you've said that Alex has done bad things to you?

[TINA]: I can't remember that person.

[APPELLANT'S COUNSEL]: Well, who is it that you think may have also done sexual things to you?

[TINA]: I don't know.

Moreover, appellant argues that the probative value of the Cantus' testimony was not outweighed by any danger of prejudice as the Cantus' testimony would impeach Tina's credibility regarding who abused her and offer an alternative explanation for Tina's allegations.

Because appellant was offering the evidence rather than attempting to exclude it, the only issue affecting admissibility is whether the Cantus' testimony regarding the alleged abuse by Alex was relevant. *See* Tex. R. Evid. 401, 402; *Cameron v. State,* 241 S.W.3d 15, 20 (Tex. Crim. App. 2007). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401; *Jensen,* 66 S.W.3d at 539. To be relevant, evidence must be both material and probative. *Miller v. State,* 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). Evidence is material if it proves any fact of consequence to the determination of the action. Tex. R. Evid. 401; *Miller,* 36 S.W.3d at 507. Appellant also must establish that the proffered testimony is probative as tending to make the existence of a material fact more or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; *Miller,* 36 S.W.3d at 507. The trial court did not abuse its discretion by determining that details of alleged abuse by Alex were not relevant to the determination of whether appellant sexually assaulted Tina, and that such details did not tend to make the existence of a material fact, *vis vis* this case concerning whether appellant sexually abused Tina, more or less probable. *See* Tex. R. Evid. 401, 402; *Miller,* 36 S.W.3d at 507. The trial court did not abuse its discretion when it allowed the Cantus' testimony and ruled that the details of any alleged previous abuse by Alex were not relevant. *See Lopez,* 86 S.W.3d at 231. Therefore, we overrule appellant's sixth issue.

*Bargas*, 252 S.W.3d at 898–99.

As the court of appeals' decision reflects, the admissibility of the proposed evidence concerns an interpretation of state law. The law is clear that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted). As discussed previously, federal habeas corpus courts typically "do not review state courts' application of state evidence law." *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010) (citations

omitted).  Bargas's federal habeas petition does not allege facts demonstrating that the trial court

erred.  Bargas does not otherwise demonstrate that the trial court's limit on the Cantu witness's

testimony violated his constitutional rights.   This ground for relief is without merit.

> 6.     *The claim that the trial court erred when it denied Bargas's requests to
> changes in the jury charge.*

Bargas argues that the trial court abused its discretion when it denied his request to make

changes to the jury charge during the guilt/innocence phase of trial.  (*See* Ground Nine, Docket

Entry No. 1 at 8).  In support of this claim, Bargas alleges that the "[o]riginal jury charge did not

fit the scope of nature of crime that was alleged." (*Id.*).  In a separate but related claim, he argues

that the trial court abused its discretion when it denied his request to advise the jury during the

punishment phase that the court had the power to stack the sentences in each case.  (*See* Ground

Ten, Docket Entry No. 1 at 8; Docket Entry No. 3 at 1).

The intermediate appeals court rejected both of these claims on direct appeal.  In doing so,

the court of appeals analyzed the issues as follows:

**D. Did the trial court err in denying appellant's requested changes to the jury
charge in both the guilt-innocence phase and the punishment phase of trial?**

Appellant presents two issues regarding changes to the jury charge in both phases
of trial.  In analyzing a jury-charge issue, we first determine if error occurred and,
if so, we conduct a harm analysis.  *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim.
App. 2005).  The degree of harm required for reversal depends on whether appellant
has preserved error by objection.  *Id.*  A jury-charge error requires reversal when,
after proper objection, the appellant suffers "some harm" to his rights.  *Id.;
Almanza v. State,* 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g),
*overruled on other grounds, Rodriguez v. State,* 758 S.W.2d 787, 788 (Tex. Crim.
App. 1988).  If appellant failed to object at trial and offered no objections to the
charge, charge error does not require reversal unless appellant shows "egregious
harm."  *Almanza,* 686 S.W.2d at 174.

**1. Did the trial court err in denying appellant's request to change the jury charge regarding extraneous-offense evidence in the guilt-innocence phase?**

In the jury charge for the guilt-innocence phase, appellant requested changes to clarify which child, Tina or Alice, and which offenses were to be considered by the jury in assessing guilt. Appellant requested that one page of the instructions pertain to Tina's charged allegations so that "the jury could have believed the other charged offense constituted an extraneous offense and have considered that against the appellant." Appellant sought changes to the instructions for another page involving Rule 404(b) evidence to pertain to "anyone other than complainant," namely Alice. Additionally, appellant alleges error in the trial court's denial of his request that the jury could not consider Alice's testimony at all on the basis that Alice's testimony was not admissible for any reason.

The guilt-innocence charges, of which appellant complains, contain article 38.37 language as promulgated in the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon 2005). Article 38.37 of the Texas Code of Criminal Procedure provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child complainant who is the victim of the alleged offense shall be admitted for its bearing on all relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

*Id.* § 2. Section 4 of article 38.37 does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law. *Id.* § 4. The guilt-innocence charges contain article 38.37 instructions as set forth below:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing other crimes, wrongs, or acts against the child who is the complainant of the alleged offense in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs, or acts, against the child, if any, and even then you may only consider the same in determining its bearing on relevant matters, including (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child for no other purpose.

Article 38.37 allows for the admission of other crimes, wrongs, or acts to be admitted when relevant. *Phillips v. State,* 193 S.W.3d 904, 911 (Tex. Crim. App. 2006). The extraneous-offense evidence of other incidents of sexual abuse involving Tina was relevant under article 38.37 to prove other matters including the state of mind of appellant and Tina and the previous and subsequent relationship between them. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. The charge, including the 38.37 instruction, did not limit the jury's consideration of the extraneous evidence involving Tina because any extraneous offenses involving Tina may have "bearing on relevant matters." *See id.* Because any extraneous-offense evidence involving Tina was relevant and admissible for the purposes listed under 38.37, an instruction limiting the jury's consideration of extraneous-offense evidence to only appellant's charged conduct with Tina would have improperly restrained the jury from considering such evidence in violation of article 38.37. *See id.*

As discussed above, Alice's testimony was admissible under Rules 404(b) and 403 to rebut appellant's defensive theory of retaliation. *See Moses,* 105 S.W.3d at 627. Therefore, appellant's complaint that Alice's testimony could not be considered at all lacks merit. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 4 ("This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law."). Furthermore, an instruction limiting the jury's consideration of extraneous-offense evidence only to that extraneous conduct between appellant and Alice, as "anyone other than the complainant," would have placed an improper restraint on the jury in violation of article 38.37. *See id.* § 2 (permitting extraneous-offense evidence involving complainant for relevant purposes). We hold the trial court did not err in denying appellant's requested changes regarding extraneous-offense evidence given the permissible purposes under Rule 404(b) and article 38.37. *See Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (requiring error to exist in the charge).

Even if the trial court had erred, there would be no basis for reversal. Given Alice's testimony, the defensive theory of retaliation, and Tina's accounts of ongoing abuse, no harm exists when viewed in light of the entire jury charge, the evidence, and the record as a whole when any extraneous-offense evidence was properly admitted under article 38.37. *See Bailey v. State,* 867 S.W.2d 42, 43 (Tex. Crim. App. 1993); *Almanza,* 686 S.W.2d at 171. Accordingly, we overrule appellant's eighth issue.

## 2. Did the trial court err in denying appellant's request to advise the jury in the jury charge of the trial court's power to stack sentences in the punishment phase?

In his ninth issue, appellant complains the trial court abused its discretion in the punishment phase in denying his request to advise the jury of the trial court's power to stack the sentences in each case. Under appellant's theory, evidence at trial established that the charged offenses arose from the same criminal episode, and

because the State filed a motion to cumulate, the trial court was required to charge the jury fully and affirmatively on the applicable law.  According to appellant, the trial court took the issue of punishment from the province of the jury in violation of his constitutional and statutory rights, and appellant claims harm in that the jury could have assessed a lower sentence on each case.

A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence.  Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007); *Taylor v. State,* 856 S.W.2d 459, 470 (Tex. App.-Houston [1st Dist.] 1993), *aff'd,* 885 S.W.2d 154 (Tex. Crim. App. 1994).  If evidence presented at trial raises an issue, and a jury charge is requested on that issue, then a charge on that issue must be given.  *Taylor,* 856 S.W.2d at 470.

Presuming without deciding that error exists, the error is harmless.  *See Harvey v. State,* 821 S.W.2d 389, 391 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd).  Reversal is required for an error that has been properly preserved only if "some harm" to the accused results from the error or if the error is "calculated to injure the rights of the defendant." *Id.; see* Tex. Code Crim. Proc. Ann. art. 36.19; *Almanza,* 686 S.W.2d at 171; *Booker v. State,* 712 S.W.2d 853, 857 (Tex. App.-Houston [14th Dist.] 1986, pet. ref'd).  In assessing harm, the reviewing court considers the entire jury charge, the state of the evidence, the arguments of counsel, and other relevant information as found in the record as a whole.  *Almanza,* 686 S.W.2d at 171; *Harvey,* 821 S.W.2d at 391.  When taken as a whole, the record reflects the jury was informed of the trial court's authority to stack the sentences when, during deliberations, the jury sent a note to the trial judge questioning whether the sentences would run concurrently or consecutively.  In a written response, the trial judge offered, "It is within the court's discretion whether the sentences will run concurrently or consecutively."  Based on the above analysis, error, if any, by the trial court in its refusal to include an instruction on its power to stack sentences does not require reversal.  *See Almanza,* 686 S.W.2d at 171.  No actual harm is demonstrated in the record.  *See Harvey,* 821 S.W.2d at 391.  Accordingly, we overrule appellant's ninth issue.

*Bargas*, 252 S.W.3d at 899–902.

"[T]he fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991); *see also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) ("Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief.").  The only question for the federal court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72 (internal quotation omitted).

The state appeals court thoroughly discussed Bargas's challenges on direct appeal. Bargas's vague arguments do not meet his burden to show that any alleged error on the part of the trial court in regard to the jury instructions "so infected the entire trial that the resulting conviction violates due process." He has not shown that the state courts' determination was contrary to, or involved an unreasonable application of federal law, as determined by the Supreme Court, or that the decision involved an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

### E.     The Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice to the defense as a result. *See Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Id.* Failing to show either deficient performance or prejudice is fatal to an ineffective assistance claim. *See id.*; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). "Like AEDPA, *Strickland* establishes a deferential standard," and in order to prevail on an ineffective assistance of counsel claim in a § 2254 proceeding, a petitioner "must prove both that his counsel's performance was objectively deficient and that his counsel's deficiency prejudiced him, and that no reasonable jurist could conclude otherwise." *Williams v. Thaler*, 684 F.3d 597, 604 (5th Cir. 2012); *see also Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Harrington*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (citing *Strickland*, 466 U.S. at 690). This is a "highly deferential" inquiry, in which "counsel is strongly presumed to have rendered adequate assistance" and that the challenged conduct was the product of reasoned trial strategy. *Strickland*, 466 U.S. at 689–90; *see also Pape v. Thaler*, 645 F.3d 281, 292 (5th Cir. 2011). To overcome this presumption, a defendant must identify counsel's acts or omissions that did not result from reasonable professional judgment. *Strickland*, 466 U.S. at 690. Counsel's error, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the outcome. *Id.* at 691 (citation omitted). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In short, a petitioner cannot demonstrate prejudice by showing that, but for counsel's deficient performance, he would have been entitled to a new trial under state law. Rather, a petitioner must also demonstrate that counsel's deficient performance rendered the result of his trial unreliable or the proceeding fundamentally unfair." *Green*, 160 F.3d at 1043 (internal citation omitted).

The state habeas court considered and rejected Bargas's ineffective assistance of counsel claims. "[T]he test for federal habeas purposes is *not* whether [the petitioner] made [the showing required by *Strickland*]." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). "Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the

clearly established federal law (*Strickland*), for succeeding on his IAC claim." *Id.* A petitioner's conclusory allegations of ineffective assistance of counsel will fail to rebut a state court's finding that his counsel was not deficient or that he was not prejudiced by his counsel's performance. *See Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983). "An assertion is conclusory if it relies on inferences without also setting forth the facts that support those inferences." *Favela v. Collier*, No. 22-40415, 91 F.4th 1210, 1213 (5th Cir. Jan. 31, 2024) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 898–99 (1990) and *Black's Law Dictionary* (11th ed. 2019)).

> *1.    The claim of counsel's failure to obtain expert witnesses.*

Bargas argues that his attorney provided ineffective assistance when he failed to call an expert witness. (*See* Ground Twelve, Docket Entry No. 1 at 9; Docket Entry No. 3 at 1). Besides referencing a "CPS case worker who previously investigated appellant[,]" Bargas does not specifically name the expert witness he believes his attorney should have called. (*See* Docket Entry No. 1 at 9).

Claims of uncalled witnesses "are disfavored [on federal habeas corpus review], especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010) (citations omitted); *see also Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001) ("Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.") (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v.*

42

*Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted).  Further, "[a] decision by counsel not to hire an expert is well 'within the realm of trial strategy,' to which [the] Court must defer." *Cox v. Davis*, No. CV 3:18-cv-29, 2019 WL 13440327, at *15 (S.D. Tex. Sept. 20, 2019) (citing *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993)).

The state habeas court rejected this claim on collateral review.  (*See* Docket Entry No. 26-13 at 52–60; Docket Entry No. 26-15 at 51–59).  Bargas did not provide the state court with an affidavit or other sworn statement from a CPS case worker or other alleged expert witness, identifying the substance of the potential testimony and whether any proposed witness was available for trial and willing to testify.  Absent an affidavit or declaration from the uncalled witness, Bargas's claim is speculative and conclusory and does not demonstrate deficient performance or prejudice.  *See Sayre*, 238 F.3d at 636.

Bargas has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

2.    *The claim of counsel's failure to suppress extraneous offense testimony.*

Bargas argues that his trial counsel provided ineffective assistance when he failed to suppress or object to the testimony of Tessa Griffiths, the victim's sister.  (*See* Ground Thirteen, Docket Entry No. 1 at 9; Docket Entry No. 3 at 1).  He asserts that Griffiths testified to Bargas's prior bad acts despite the fact that he had not been charged or convicted of those acts.  (*See* Docket Entry No. 1 at 9).

43

Although Bargas does not specifically point to what testimony of Ms. Griffiths he alleges his counsel should have objected to, the trial record shows that counsel did in fact object to Ms. Griffiths's testimony, but that the trial court overruled the objection:

| [THE PROSECUTOR]: | Now, I just asked you if George had ever touched in places where you shouldn't be touched? |
|---|---|
| [MS. GRIFFITHS]: | Yes, ma'am. |
| MR. HOCHGLAUBE: | Judge, for absolute clarity of the record, I would make objections under 401, 402, 404(b) and 403. |
| THE COURT: | Those are all overruled. |
| MR. HOCHGLAUBE: | Then I have a continuing running objection to the rest of this testimony? |
| THE COURT: | You may. |

(Docket Entry No. 25-4 at 87).

The state district court judge rejected this claim during the state habeas proceeding, finding as follows:

13. The court finds that, according to the record, Mr. Hochglaube did object to the testimony of Tessa Griffis and that the trial court overruled his objection. The court also finds that the trial court's ruling was upheld by the Court of Appeals.

14. The court finds that the applicant has failed to show trial counsel's actions were deficient.

(Docket Entry No. 26-13 at 53; Docket Entry No. 26-15 at 52).

Counsel is not deficient for not making an argument that counsel actually made. *See Mahmood v. United States*, Civil Action No. 6:18cv489, 2020 WL 2758791, at *20 (E.D. Tex. Apr. 29, 2020) ("[C]ounsel cannot be ineffective for failing to do something he actually did . . . ."), *R&R adopted by*, No. 6:13cr32, 2020 WL 2747245 (E.D. Tex. May 27, 2020). Nor is counsel deficient simply because the trial court overrules his objections or disagrees with him. *See, e.g.*,

44

*Domanguera v. United States*, No. CR 04-61-02-JMS, 2007 WL 461307, at *7 (D. Haw. Feb. 7, 2007) (holding that just because "the court did not agree" with counsel's arguments "does not make [counsel]'s representation deficient"); *McCall v. United States*, No. 2:08-CR-57, 2015 WL 7722027, at *6 (E.D. Tenn. Nov. 30, 2015) ("The fact that this court did not agree with [counsel] does not mean that [counsel] provided deficient representation.").

Bargas has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

>   3.    *The claim of counsel's failure to obtain evidence of a CPS investigation.*

Bargas claims that counsel was ineffective for failing to obtain the CPS case log of the alleged investigation into Tabitha Griffiths,[9] the victim's mother. (*See* Ground Fifteen, Docket Entry No. 1 at 9; *see also* Docket Entry No. 3 at 2).

The state court considered this claim during the habeas proceeding. In rejecting the claim, the court found as follows:

>   19. In the applicant's fifth ground for relief, the applicant claims that he was denied the effective assistance of counsel because trial counsel failed to obtain evidence of a CPS investigation. *See* Application, p. 14.
>
>   20. The court finds that the applicant failed to provide evidence of the records referenced in his claim, he does not explain how counsel's assistance was constitutionally deficient, nor does he explain how any purported deficiency prejudiced him that the jury's verdict cannot be relied upon.

(Docket Entry No. 26-13 at 54; Docket Entry No. 26-15 at 53).

---

[9] The petitioner spells this person's name as "Tabatha Griffis." (*See* Docket Entry No. 1 at 9). However, the trial transcript included with the state court record spells her name as "Tabitha Griffiths." (*See* Docket Entry No. 25-4 at 114).

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (finding that movant failed to show that his counsel's performance was deficient when movant "failed to suggest with specificity what . . . evidence could have been uncovered by a more thorough investigation by his counsel, and has failed to show that counsel's failure to follow up on his leads was unreasonable.").

Bargas does not explain what the alleged CPS investigation of Tabitha Griffiths would have uncovered or how it would have helped his defense. He has therefore failed to meet his burden to show that his attorney was deficient in failing to pursue this alleged investigation or that Bargas was prejudiced by this failure to investigate. Bargas has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record. Bargas is not entitled to habeas relief on this ground.

> 4.    *The claim of counsel's failure to object to the prosecutor's instructions to the jury during closing argument.*

Bargas next argues that his trial counsel performed deficiently when he failed to object to the prosecutor's instruction to the jury to "start at fifty and go up" on each count. (*See* Ground Sixteen, Docket Entry No. 1 at 9). Bargas argues that had the jury not heard the prosecutor's instruction, the jury would have assessed ten years in prison on each count. (*Id.*).

Bargas raised this claim during the state habeas proceeding. In rejecting the claim, the state habeas court found:

> 21. In the applicant's sixth ground for relief, the applicant claims that he was denied the effective assistance of counsel because trial counsel failed to object to comments made by the prosecutor during closing. *See* Application, p. 15.

46

22. The court finds that the applicant fails to show that an objection to the prosecutor's comments would have had merit and that a ruling on the objection would have changed the outcome of the case. *Roberson v. State,* 852 S.W.2d 508, 510-512 (Tex. Crim. App. 1993).

(Docket Entry No. 26-13 at 54; Docket Entry No. 26-15 at 53).

During the State's closing, the prosecutor made this statement before the jury started deliberations: "But I hope that you consider and start at the lowest of 50 and go all the way to life. Thank you." (Docket Entry No. 25-4 at 206).

"Federal habeas relief is available to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *King v. Houston*, 68 F.3d 466 (5th Cir. 1995) (per curiam) (quoting 28 U.S.C. § 2254(a)). "Claims arising out of a state sentencing decision are not constitutionally cognizable under § 2254 unless the sentence imposed exceeds the statutory limits or is 'wholly unauthorized by law.'" *Id.* (quoting *Haynes v. Butler,* 825 F.2d 921, 924 (5th Cir.1987), *cert. denied,* 484 U.S. 1014 (1988)).

Bargas's sentences were within the statutory limits. The maximum sentence for aggravated sexual assault of a child is life in prison and the minimum sentence is 25 years in prison. *See* Tex. Penal Code § 22.021(f)(1). Bargas received a 60-year sentence on each count. The 60-year sentences did not exceed the statutory range. Bargas has not met his burden to establish a reasonable probability that, but for counsel's failure to object to the prosecutor's comment, his sentences would have been significantly less harsh. *See Miller v. Dtreke,* 420 F.3d 356 (5th Cir.2005) (citing *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir.1993)).

No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

5.    *The claim of counsel's failure to object to the stacking of sentences.*

In his next ground for relief, Bargas argues that trial counsel performed deficiently when he "failed to object to the trial prosecutor's motion to stack sentences to run them consecutively." (*See* Ground Seventeen, Docket Entry No. 1 at 10; Docket Entry No. 3 at 1).

Texas law provides that a judge may cumulate sentences for two or more convictions arising out of the same criminal episode if the defendant is convicted of certain crimes, including aggravated sexual assault in violation of Texas Penal Code § 22.021. *See* Tex. Pen. Code § 3.03(b)(2)(A). Bargas does not argue, let alone show, that an objection to the State's motion to accumulate sentences had merit and would have been sustained by the trial court. *See, e.g.*, *Anderson v. Dir., Texas Dep't of Crim. Just., Corr. Institutions Div.*, No. 2:18-CV-146-Z-BR, 2021 WL 2877461, at *14 (N.D. Tex. June 30, 2021) ("To prevail on an improper-stacking claim, Petitioner would have to show that the trial court abused its discretion, but he cannot do so on this record because the judge's ruling was authorized by law.") (citations omitted), *R&R adopted by*, No. 2:18-CV-146-Z-BR, 2021 WL 2874117 (N.D. Tex. July 8, 2021); *Henderson v. Cockrell*, 333 F.3d 592, 602 (5th Cir. 2003) ("[T]rial counsel did not render deficient performance by failing to make a futile objection.").

The state appeals court rejected Bargas's argument that his sentences were improperly stacked. *See Bargas*, 252 S.W.3d at 899–90. Bargas has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or that the decision involved an unreasonable determination of the facts based on the evidence in the record. Bargas is not entitled to habeas relief on this ground and the claim should be denied.

48

6.      *The claim of counsel's failure to request that each cause number be tried separately.*

Bargas asserts that defense counsel performed deficiently in failing to move for each cause number to be tried separately.  (*See* Ground Eighteen, Docket Entry No. 1 at 10).

Bargas brought this claim during the state habeas proceedings.  (*See* Docket Entry No. 26-13 at 29; Docket Entry No. 26-15 at 29).  In rejecting the claim, the state trial court judge found that the claim was raised and rejected on direct appeal.  (*See* Docket Entry No. 26-13 at 54; Docket Entry No. 26-15 at 53).

Under Texas law, a defendant is not entitled to a severance of offenses of aggravated sexual assault of a child "unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires."  Tex. Pen. Code § 3.04; *see also* Tex. Pen. Code § 3.03.  Bargas has not shown that a request to sever would have been granted or that he was unfairly prejudiced by the joinder of the two cases.  Counsel is not deficient for failing to file a meritless motion.  *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *see also Rodriguez v. Stephens*, No. 2:12-CV-187, 2014 WL 3058297, at *9 (N.D. Tex. July 7, 2014) ("Absent a showing that counsel failed to file a meritorious motion and that the outcome of the trial would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.").

Bargas has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

7.    *The claim of counsel permitting the testimony of Tabitha Griffiths.*

Bargas argues that his attorney provided ineffective assistance when he "allowed" the testimony of Tabitha Griffiths, the victim's mother, when Ms. Griffiths "should have been discredited due to the conflict of interests as she was under pressure from CPS and criminal offenses for the abuse and possession of prescription drugs." (*See* Ground Twenty-Three, Docket Entry No. 1 at 11; *see also* Docket Entry No. 3 at 3).

Bargas presented this claim during the state habeas proceedings. In rejecting the claim, the state trial court judge made the following findings:

> 8. In the applicant's second and third grounds for relief, the applicant claims that he was denied the effective assistance of counsel at trial because trial counsel "failed to suppress" the testimony of two witnesses, Tabatha Griffis and Tessa Griffis. *See* Application, p. 8, 10.
>
> 9. On August 14, 2015, trial counsel Mark Hochglaube filed an affidavit in response to claims made against him by the applicant in the first writ of habeas corpus, 1045925-A. (State's Writ Ex. A, Hochglaube Aff).
>
> 10. The court finds that the statements in the affidavit of Mark Hochglaube are credible and reliable in all ways, and the facts asserted therein are true.
>
> 11. Mr. Hochglaube stated that he did not object to the testimony of Tabatha Griffis because he wanted the jury to believe her initial statements to police that she was unaware of any sexual abuse and did not believe any could have taken place. (Aff. at ¶ 4). He further stated that because he wanted the jury to believe her, he "wasn't interested in tarnishing her credibility." (Aff. at ¶ 4).
>
> 12. The court finds that, based on the credible affidavit of Mr. Hochglaube, there were legitimate and professionally sound reasons for Mr. Hochglaube's actions in not attacking the credibility of Tabatha Griffis.

(Docket Entry No. 26-13 at 53; Docket Entry No. 26-15 at 52).

Mr. Hochglaube's rationale for not trying to impeach Tabitha Griffiths was the result of considered trial strategy. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it

permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citations omitted). Counsel's trial strategy, including "decisions regarding examination and presentation of witnesses and testimony . . . enjoy[] a strong presumption of effectiveness." *Pape*, 645 F.3d at 291–92 (citations omitted). Defense counsel's grounds for not attacking Tabatha Griffiths's credibility are not unreasonable. *See Reed v. Vannoy*, 703 F. App'x 264, 269–70 (5th Cir. 2017) (per curiam) (affirming the district court's denial of habeas relief when the district court found that trial counsel's failure to impeach witnesses was strategic and objectively reasonable).

Bargas has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

### F.    The Claims Concerning the Prosecutor

#### 1.    *The claim that the prosecutor fabricated and falsified evidence.*

Bargas argues that the prosecutor fabricated evidence when she alleged that Bargas "committed the offense in a manner in which the alleged victim did not describe. Trial Prosecutor alleged that [Bargas] touched his penis to the outside of the female organ and constituted an act of penetration. Alleged victim did not describe the act in this manner." (*See* Ground Nineteen, Docket Entry No. 1 at 10; Docket Entry No. 3 at 2). He goes on to allege that the "[p]rosecutor also alleged that the outside of the female organ was the vulva and touching the outside of the female organ constituted penetration." (Docket Entry No. 1 at 10). Related to this claim, Bargas argues that the trial court judge abused its discretion when it "allow[ed] [the] trial prosecutor to collaborate with state's expert in fabricating evidence when d[e]scribing the act of which the crime

was committed.  When prosecutor gave false evidence that the outside of the female organ was touched by penis and constituted penetration."  (Ground Twenty, Docket Entry No. 1 at 10).

"[A] conviction obtained through false evidence, known to be such by representatives of the State[,] violates a defendant's constitutional rights."  *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014) (citing *Miller v. Pate*, 386 U.S. 1, 7 (1967) (internal quotation marks omitted).  As explained by the Fifth Circuit:

> A violation occurs where there is a deliberate deception of court and jury by the presentation of testimony known to be perjured.  The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.  To obtain relief, [a petitioner] must show 1) the testimony was actually false, 2) the state knew it was false, and 3) the testimony was material.  The testimony is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.

*Id.* (internal citations and quotation marks omitted).

Bargas is essentially arguing that the prosecutor's description of the way Bargas allegedly committed the crime differed from the victim's testimony on how the crime was committed.  Bargas has not met his burden to show that any of the victim's testimony was actually false or that the State knew it was false.  He gives a general description of the prosecutor's alleged statement, but he does not identify that statement in the record.

Bargas does not demonstrate that relief is warranted under the governing federal habeas corpus standard of review and the respondent is entitled to dismissal of these claims.

>      2.     *The claim that the State failed to turn over Brady evidence.*

Bargas claims that the State failed to turn over information related to a CPS investigation of Tabitha Griffiths, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (*See* Ground Fourteen, Docket Entry No. 1 at 9 and Ground Twenty-One, Docket Entry No. 1 at 10; Docket Entry No. 3 at 2).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the government violates due process when it fails to disclose evidence favorable to the accused if such evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The government's duty to disclose extends to both impeachment and exculpatory evidence. *See United States v. Bagley*, 473 U.S., 676 (1985). To prove a *Brady* claim, a petitioner "must show three things: (1) the evidence at issue is favorable to the defense, either because it is exculpatory or impeaching, (2) the prosecution suppressed the evidence, and (3) the evidence is material." *Murphy*, 901 F.3d at 597. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). "Evidence is material where there exists a 'reasonable probability' that had it been disclosed the result of the trial would have been different." *Dickson v. Quarterman*, 462 F.3d 470, 477 (5th Cir. 2006). "Under AEDPA, [a federal habeas court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)). "Rather, [the federal habeas court] decide[s] whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law." *Id.* (citing *Busby*, 359 F.3d at 717).

In the state habeas proceeding, Bargas claimed that the prosecutor failed to disclose evidence of the CPS case file related to Tabatha Griffiths. (*See* Docket Entry No. 26-13 at 5–34; Docket Entry No. 26-15 at 5–34). The state district court rejected this claim, finding:

> 17. The court finds that the applicant does not present any evidence that the State had possession of CPS records or that they even knew of their existence.

18. The court finds that the State did not have a duty to seek out CPS records on behalf of the applicant that were not connected to prosecution of the case.

(Docket Entry No. 26-13 at 54; Docket Entry No. 26-15 at 53).   These factual findings are presumed correct unless Bargas presents clear and convincing evidence to the contrary.

Bargas has failed to overcome the presumption of correctness that applies to the state court's factual findings.  He offers no evidence that the prosecution knew about any CPS records related to Tabatha Griffiths or that the records were material to the criminal proceedings against Bargas.

The record fails to show that the state habeas court's denial of Bargas's *Brady* claim was an unreasonable or contrary application of clearly established federal law, or that the state habeas court's decision involved an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

## IV.    Certificate of Appealability

Bargas has not requested a certificate of appealability, but Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.  *See* 28 U.S.C. § 2253.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To warrant a certificate of appealability as to claims denied on their merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to

54

deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). When relief is denied based on procedural grounds, a petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that jurists of reason "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After carefully considering the record, the court concludes that Bargas has not met the requisite showing. There are no grounds to issue a certificate of appealability.

## V.    Conclusion

Bargas's petition for a writ of habeas corpus, Docket Entry No. 1, is dismissed with prejudice. Any pending motions are denied as moot. A certificate of appealability will not issue. Final judgment is separately entered.

SIGNED on September 8, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge